UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:10CR371JCH(MLM) |
| JOHN R. STEFFEN, | ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on Defendant's Motion to Dismiss Indictment for Insufficiency and Failure to State an Offense. [Doc. 29] Defendant's Memorandum in Support is Doc. 30. The government responded. [Doc. 39] Defendant replied. [Doc. 40] Oral argument was heard on September 29, 2010.

Defendant is charged in a one-Count Indictment with Bank Fraud in violation of 18 U.S.C. §§ 1344(1) and 1344(2).[1]

---

[1] The bank fraud statute, 18 U.S.C. § 1344 provides:

Whoever knowingly executes, or attempts to execute, a scheme or artifice - -

(1) to defraud a financial institution; or

(2) to obtain any of the monies, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution by means of false or fraudulent pretenses, representations, or promises:

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

The Indictment alleges that "[o]n or about May 7, 2007, defendant JOHN R. STEFFEN used the Brownfield Remediation Tax Credits as collateral to obtain a loan from The Business Bank of St. Louis, Clayton, Missouri to MB Lofts, LLC. . ." Indictment ¶8. "Between on or about May 7, 2007, and on or about April 23, 2008, The Business Bank of St. Louis advanced a total of $1,115,633.00 to MB Lofts, LLC. . ." Id. ¶10. "On or about December 17, 2007, unbeknownst to The Business Bank of St. Louis, and without its approval and authorization, defendant JOHN R. STEFFEN fraudulently sold Brownfield Remediation Tax Credits, in the amount of $827,415.02, which were part of the collateral for the loan. . ." Id. ¶11. Steffen purportedly "used the proceeds to pay operating expenses on other projects." Id. ¶12. The Indictment alleges that The Business Bank discovered the sale of its collateral and use of the proceeds on April 10, 2008. Id. ¶13.

Paragraph 15, the charging paragraph, states:

> [T]he defendant herein, did knowingly execute and attempt to execute a scheme and artifice to defraud a financial institution, The Business Bank of St. Louis, and to obtain money, funds, credits, assets, securities and other property owned by and under the custody and control of The Business Bank of St. Louis, by means of materially false and fraudulent pretenses, representations and promises, by representing to The Business Bank of St. Louis that Missouri Brownfield Remediation Tax Credits of $1,424,818 would be used as collateral on a $1,115, 633 loan from The Business Bank of St. Louis to MB Lofts, LLC, a corporation controlled by defendant JOHN R. STEFFEN, until the loan was paid, when in fact JOHN R. STEFFEN falsely and fraudulently converted the tax credits for his own use, sold the tax credits to other persons, and used the proceeds of said sale to pay expenses on other real estate projects which caused the loan from The Business Bank of St. Louis to MB Lofts, LLC a corporation controlled by defendant JOHN R. STEFFEN, to be unsecured.

Id. ¶15.

Defendant argues that the Indictment is vague and ambiguous and that defendant has no way of knowing what, if any, misrepresentations were made, to whom they were made and when they were made. He argues that the mere recitation of the statutory language in the Indictment does not fairly inform him of the charges he must meet.

The parties do not dispute the basic law of indictments: To be legally sufficient on its face, the indictment must contain all the essential elements of the offense(s) charged, it must fairly inform the defendant of the charge(s) against which the defendant must defend, and it must allege sufficient information to allow the defendant to plead a conviction or an acquittal as a bar to a subsequent prosecution. United States Const. Amends. V and VI; Fed.R.Crim.P. 7(c); Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Hance, 501 F.3d 900, 906 (8th Cir. 2007); United States v. Just, 74 F.3d 902, 903-04 (8th Cir. 1996); United States v. Wessels, 12 F.3d 746, 750 (8th Cir. 1993), cert. denied, 513 U.S. 831, (1994); United States v. Young, 618 F.2d 1281, 1286 (8th Cir.), cert. denied, 449 U.S. 844 (1980).

There is no doubt that an indictment plays a part in protecting a defendant against double jeopardy. However, "the defendant's attack on the present Indictment falls wide of the mark since it is the record as a whole that protects an accused from being 'twice put in jeopardy of life or limb.'" United States v. Roman, 728 F.2d 846, 853 (7th Cir.), cert. denied, 466 U.S. 977 (1984). It is necessary that the record as a whole, not just the indictment, shows with accuracy to what extent a defendant may plead a former acquittal or conviction if he is charged in another

proceeding with a similar offense.  Id.  This is because a defendant claiming he has been subjected to double jeopardy bears the burden of establishing that both prosecutions are for the same offense.  "The defendant must show that 'the evidence required to support a conviction on one indictment would have been sufficient to warrant conviction on the other' indictment."  Roman, 728 F.2d at 853 quoting United States v. West, 670 F.2d 675, 681 (7th Cir.), cert. denied, 457, U.S.1124 (1982).

Defendant has been provided enormous amounts of discovery in this case.  The Indictment, the discovery and the record will assure the defendant is protected against double jeopardy, in other words,

> the true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

United States v. Goldberg, 225 F.2d 180, 184 (8th Cir. 1955); see also Costello v. United States, 350 U.S. 359, 363-64 (1956) (the test of the sufficiency of the government's evidence should come at trial, not in challenges to the indictment); United States v. Hirsch, 360 F.3d 860, 863 (8th Cir. 2004) (defendant's Motion to Dismiss amounts to request for court to determine guilt or innocence based on facts which the jury should decide at trial).

In its Response to defendant's argument the government stated in its Response and affirmatively admitted several times at oral argument that **defendant**

made no misrepresentations.[2] At oral argument the government argued that representations can be made by affirmative actions or by silence. Here, the government alleges that defendant was silent. He sold the tax credits to pay other bills and simply did not tell the bank. The government's Response says "In simple terms, the Indictment alleges that Mr. Steffen sold the tax credits which were collateral to a loan at The Business Bank, a financial institution defined by Title 18, United States Code, Section 20." It says he "used the sale proceeds from the tax credits for other purposes to pay other bills but not repay The Business Bank loan." Gov.'s Response, Doc. 39 at 1. The government argues its "bank fraud allegation is very simple. Namely, Mr. Steffen converted the tax credits to his own use to pay other bills without the knowledge or consent of the bank as the tax credits were collateral on the loan. Selling the collateral is a bank fraud under these circumstances." Id. at 3.

Based on the government's position, both in the Indictment, the discovery and its admissions in its Response and oral argument, it appears that the issue of the sufficiency of the Indictment to inform defendant of the charges against which he must defend is moot. The issue before the court is whether the Indictment states the offense of bank fraud.

The crime of bank fraud has three essential elements:

---

[2] Based on this admission defendant agreed at oral argument that his Motion for Bill of Particulars was moot as there were no representations requiring further information.

> *One*, the defendant knowingly [executed] [attempted to execute] [participated in] a scheme [to defraud a financial institution] [to obtain monies] [funds] [credits] [owned by] [under the custody and control of] a financial institution by means of material [falsehoods] [fraudulent pretenses] [false or fraudulent representations] [false or fraudulent promises]].
>
> *Two*, the defendant did so with intent to defraud; and
>
> *Three,* the financial institution was [chartered by the United States Government] [insured by the United States Government].

**Eighth Circuit Manual of Model Jury Instruction - Criminal, 6.18.1334**

> **The following definitions are part of this instruction:**
>
> **The phrase "scheme to defraud" includes any plan or course of action intended to deceive or cheat another out of [money, property or property rights] by [employing material falsehoods] [concealing material facts] [omitting material facts]. It also means the obtaining of [money or property] from a financial institution by means of material false representations or promises.**
>
> **A [fact] [falsehood] [representation] [pretense] [promise] is "false" when it is untrue when made or effectively conceals or omits a material fact. A [fact] [falsehood] [representation] [pretense] [promise] is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the institution in deciding whether to engage or not to engage in a particular transaction. [However, whether a [fact] [falsehood] [representation] [promise] is "material" does not depend on whether the institution was actually deceived.]**

**Id.**

The Committee Comments to instruction 6.18.1344 state: "The term 'scheme and artifice to defraud' includes any plan or pattern of conduct using false or fraudulent pretenses or representations. United States v. Swearingen, 858 F.2d [1555 at] 1557 [11th Cir. 1988]. See also United States v. Whitley, 688 F.Supp. 48, 54-55 (D.Me. 1988)."

The Eighth Circuit has specifically held that both subsection (1) and (2) of the bank fraud statute require that the defendant make deliberate false representations to the bank. United States v. Ponec, 163 F.3d 486 (8th Cir. 1998). In Ponec, the defendant argued he did not make any false statements to the bank so there could be no scheme to defraud. The Eighth Circuit held "we grant that the government needed to prove that Mr. Ponec deliberately made false representations to the bank. Otherwise there would be no scheme or artifice to defraud." Id. at 489.

Congress intended the bank fraud statute be afforded the same broad application as the mail and wire fraud statutes. Committee Comments to model Instruction 6.18.1334; United States v. Rimell, 21 F.3d 281, 287 (8th Cir. 1994) ("The bank fraud statute was modeled after the mail and wire fraud statutes, and this court has stated that the bank fraud statute should be given the same broad construction as those statutes." ) Since the bank fraud statute was patterned after the mail and wire fraud statutes cases interpreting those statutes may apply to the bank fraud statute. United States v. Stavroulakes, 952 F.2d 686, 694 (2nd Cir. 1992).

In one of the primary cases relied on by the government, United States v. Colton, 231 F.3d 890 (4th Cir. 2000), the Fourth Circuit noted that since "the mail, wire and bank fraud statutes do not define the phrase 'scheme or artifice to defraud,' courts interpreting the statutes must infer that Congress implicitly incorporated the common-law meaning of the relevant terms. Colton, 231 F.3d at 898. "[E]ven in the absence of a fiduciary, statutory or other independent legal duty to disclose material information, common-law fraud includes acts taken to conceal, create a false

impression, mislead, or otherwise deceive in order to 'prevent' [ ]the other [party] from acquiring material information." Id., quoting Restatement (Second) of Torts § 550 (1977). The court went on to say:

> Thus, fraudulent concealment - without any misrepresentation or duty to disclose - can constitute common-law fraud. This does not mean, however, that simple nondisclosure similarly constitutes a basis for fraud. Rather, the common-law clearly distinguishes between concealment and nondisclosure. The former is characterized by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter. The latter is characterized by mere silence. Although silence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud, suppression of the truth with the intent to deceive (concealment) does. See, e.g., Stewart v. Wyoming Cattle Ranche Co., 128 U.S. 383, 388, 9 S.Ct. 101, 32 L.Ed. 439 (1888).

Colton, 231 F.3d at 899. In other words, in the absence of an independent disclosure duty, nondisclosure, or mere silence is not fraudulent. See Colton, 231 F.3d at 899.[3] In the present case, the Indictment alleges no independent disclosure duty and the government makes absolutely clear in the Indictment, in its Responses to defendant's Motion and in oral argument that there were no misrepresentations made by defendant. All that is alleged is his silence.

The government relies on the Eighth Circuit Instruction 6.18.1344 for the proposition that "an omission can be a material fact" and concludes "in this case, Mr. Steffen allegedly failed to tell the bank of his conversion of the tax credits and use of the money to pay other bills." Gov's. Response, Doc. 39 at 3. However, as discussed

---

[3] Colton is instructive for the numerous sources and cases it cites which discuss the concealment/nondisclosure analysis and concludes that nondisclosure without an independent duty to disclose is not actionable.

above in the analysis of the difference between concealment and nondisclosure, the material fact "omitted" must be <u>part</u> of a "representation" to satisfy the misrepresentation element of bank fraud. Neither the Indictment nor the government's Response allege defendant lied to the bank or made any misleading statements. Defendant's failure to tell the bank of his use of the collateral between December, 2007 and April, 2008 absent an affirmative act to mislead the bank, is not a misrepresentation or a scheme to defraud within the meaning of the bank fraud statute. Nondisclosure is not a crime without some independent legal duty to disclose.

Many federal cases have held that the sale of collateral constitutes a violation of §3144 only if, subsequent to the sale, the defendant deliberately conceals the sale or misrepresents to the bank the status of the collateral. In <u>United States v. Eith</u>, 2007 WL 1847274 (E. D. Wis., June 27, 2007) the defendant sold cows that were pledged as collateral for a bank loan. The indictment alleged that the "defendant sold cows, concealed the sales, and materially represented the status of the herd to [the bank]." In denying defendant's motion to dismiss the indictment the court held that the indictment sufficiently set out the elements of bank fraud because it "allege[d] *not just that defendant sold the cows securing the loan*, but that he thereafter made material misrepresentations about the cows to the bank." <u>Id.</u> (emphasis added).

Similarly, the Eleventh Circuit has held that §1344 liability requires deliberate, active concealment of the mis-applied loan collateral. In <u>United States v. Goldsmith</u>,

109 F.3d 714, 715 (11th Cir. 1997) the defendant used certain vehicles as the collateral for a line of credit and proceeds from the sale of these vehicles were supposed to pay off the line of credit. The defendant was required to report to the bank the status of the automobile loans. Subsequent to obtaining the line of credit, the defendant repossessed some of the cars on defaulted automobile loans and then resold the cars without informing the bank of the defaults or remitting the sales proceeds to the bank. He falsified his reports to the bank making it appear that the automobile loans were merely delinquent and not yet the subject of repossession. In response to the defendant's argument on appeal that his conduct constituted a breach of contract not a violation of §1344, the Eleventh Circuit held that the defendant's argument "overlook [ed] the significance [of the falsified reports]. The Eleventh Circuit found that the falsification of the reports was sufficient to support a finding of liability under §1344. It noted, however, that "[i]f along with the conversion [of the sales proceeds], [the defendant] had honestly reported to the bank that the collateral had been sold and he simply failed to pay the bank the proceeds, it would be difficult to infer fraudulent intent." Id. In the instant case the Indictment does not allege that Mr. Steffen misrepresented the status of the Brownfield tax credits to the bank following their sale.

Of particular significance is the Eighth Circuit case of United States v. Matousek, 894 F.2d 1012, 1012-13 (8th Cir. 1990)[4]. In this case the defendant

---

[4] Matousek is one of the cases cited by the government allegedly in support of its position. It is discussed *infra* in that context.

obtained a loan and secured it with his inventory of used cars which the bank monitored by conducting periodic audits and requiring the defendant to furnish the titles. After entering the loan agreement, the defendant sold some of the cars and at the same time deliberately submitted duplicate titles to the bank falsely indicating the vehicles were in inventory as collateral for the loan. Id. at 1013. The Eighth Circuit held that the defendant's scheme "[fell] squarely within the intended scope of the criminal bank fraud statute" and that "[t]he evidence [was] uncontroverted that the [defendant] misrepresented the status of his inventory and the Bank surrendered good titles in exchange for worthless titles." Id. at 1014. The decisions in Eith, Matousek and Goldsmith all require affirmative misrepresentations by the defendant subsequent to the sale of the collateral. See e.g., United States v. Rubashkin, 2010 WL 746879 (N.D. Iowa, March 1, 2010) (falsifying documents in order to overstate accounts receivable which were pledged as collateral for a loan); United States v. Milne, 384 F.Supp. 2d 1309, 1309 (E.D.Wis. 2005) (submitting statements to bank falsely representing ownership of cars that were already sold); United States v. Chevalier, 1 F.3d 581, 582-83 (7th Cir. 1993) (pledging previously sold equipment as collateral); United States v. Gunther, 876 F.2d 1113, 1116 (5th Cir. 1989) (pledging titles for cars the defendant had sold to third persons). The parties have not cited nor has this court found a scheme to defraud where the only allegation is the misapplication of the collateral itself.

The government cites numerous cases which purportedly support its position. However, they cut the other way. All of the cases involve representations that

actively conceal or omit material facts from a representation. In some of the cases there was also an independent duty to disclose because of a fiduciary relationship. See e.g., United States v. Moran, 312 F.3d 480 (1st Cir. 2002).

The government cites United States v. Rimell, 21 F.3d 281 (8th Cir.), cert. denied, 513 U.S. 976 (1994) in which the defendant used straw parties to falsely inflate values of properties, file for loan applications and inflated rental schedules. Therefore, there was clearly a misrepresentation. In United States v. Blackburn, 9 F.3d 353 (5th Cir. 1993), cert. denied, 613 U.S. 830 (1994) the defendant made false statements to the bank about the purpose for withdrawing the CD and about his knowledge that it was pledged. The court stated:

> This case would be different and criminal liability should not attach if the facts showed that Blackburn did not know from the outset that there was a discrepancy in the loan documents, did not make false statements to the bank that the CD was intended only as a compensating balance rather than a pledge, and did not advise Lutz to mislead FBI investigators. The bank fraud statute can not mean that a borrower is criminally at fault whenever he seeks, without the use of fraudulent representations, to take advantage of a bank's negligent loan documentation.

Blackburn, 9 F.3d at 357, n.3. Again, clearly this case involved a misrepresentation. In United States v. Matousek, 894 F.2d 1012 (8th Cir.), cert. denied, 494 U.S. 1090 (1990) the sole proprietor and owner of a used car lot obtained a loan secured by his inventory of used cars; he submitted duplicate titles to the bank falsely representing that those vehicles were in inventory, and therefore collateral, when in fact those vehicles had been sold. There is no question that there was an active misrepresentation by the defendant. In United States v. Gunter, 876 F.2d 1113 (5th

Cir.), cert. denied, 493 U.S. 871 (1989) two automobile dealership employees were convicted of pledging to banks certificates of title for vehicles which they no longer owned. Although the defendants attacked their conviction on grounds that they made no express misrepresentations, the court found that the back of an automobile certificate of title lists the last transferor and is signed by the last transferee, thereby expressly representing the identity of the car's current owner. Id. at 1116. This falsely represented that they or their companies owned the cars whose titles they pledged. Id. In United States v. Milne, 384 F.Supp. 2d 1309 (E.D.Wis. 2005) the operator of an auto dealership obtained a line of credit collateralized by his fleet of cars. His loan agreement required him to periodically notify the bank of the status of the fleet and pay down the loan when he made a sale. He submitted five statements to the bank falsely representing that he owned cars he had sold. Id. at 1309. Again, the facts indicate a misrepresentation. As shown, the government's cases do not support its position.

However, in United States v. Sheahan, 31 F.3d 595 (8th Cir. 1994), although there were clearly misrepresentations by which the defendant knowingly submitted insufficient funds checks which the bank president knowingly posted to an account to deceive auditors, there is language in the case in which the Eighth Circuit states:

> A scheme violates §1344(a) if the scheme is 'a departure from fundamental honesty, moral uprightness, or fair play and candid dealings in the general life of the community. The bank fraud statute condemns schemes designed to deceive in order to obtain something of value.'

Sheahan, 31 F.3d at 600 citing United States v. Britton, 9 F.3d 708, 709 (8th Cir. 1993) quoting United States v. Goldblatt, 813 F.2d 619, 624 (3rd Cir. 1987). In Britton, the Eighth Circuit stated ". . .the government did not have to show Britton made false representations" in order to state a claim under 18 U.S.C. § 1344(1) that he executed a scheme to defraud a federally insured bank. In Britton, the defendant was a straw man between a man named Stratton and a trailer manufacturer enabling Stratton to misrepresent the trailer's purchase price to the bank and defendant furthered the ruse by securing inflated appraisals for the bank and concealing the trailer to prevent discovery of a scheme. It is of note that in Goldblatt there were also misrepresentations in that the defendant concealed the fact that the man in the photographs was his son and the failure to identify him was a material fact because as a result of defendant's deliberate misstatement, his account was re-credited and he was able to withdraw money. Thus while saying the government need not allege misrepresentation under §1344(1), Sheahan, Britton and Goldblatt all have factual situations which include some sort of misrepresentations.

Of course, the concern of the court is the Eighth Circuit decisions that are in apparent conflict. Ponec in 1998 clearly says misrepresentations are required to allege bank fraud under both §1344(1) and 1344(2). Britton in 1993 and Sheahan in 1994 say bank fraud can be alleged without misrepresentations. Arguably, the quotations from Britton and Sheahan are *dicta*, however, because all of the cases cited contain facts that could be construed as misrepresentations in one form or another. Although the cases agree that a "scheme to defraud" is not capable of

precise definition, this court finds that factual allegations sufficient to amount to a "misrepresentation" are equally elusive.

The court has balanced the weight of the authority from other circuits, the application common law interpretation of "a scheme to defraud" and the Committee Comments to the Eighth Circuit Bank Fraud Instruction. These sources all hold that nondisclosure or silence is insufficient to state a bank fraud claim. See Colton, 231 F.3d 898 and cases cited therein. The court finds that the great weight of the authority and the Eighth Circuit's holding in Ponec is that nondisclosure is insufficient and therefore the government's allegations that defendant made no misrepresentation, and was merely silent about his sale of the tax credits is insufficient to state the offense of bank fraud under either §13441(1) or §1344(2).

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant's Motion to Dismiss Indictment for Failure to State an Offense be **GRANTED**. [Doc. 29-2]

**IT IS FURTHER RECOMMENDED** that the Indictment be **DISMISSED**.

**IT IS FURTHER RECOMMENDED** that defendant's Alternative Motion to Dismiss the Indictment for Insufficiency be **DENIED AS MOOT**. [Doc. 29-1]

The parties are advised that they have fourteen (14) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure

to file timely objections may result in a waiver of the right to appeal questions of fact.

See <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990).

<u>/s/Mary Ann L. Medler</u><br>
**MARY ANN L. MEDLER**<br>
**UNITED STATES MAGISTRATE JUDGE**

Dated this <u>  25th  </u> day of October, 2010.